United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11                                                No. C 08-01327 MMC

YUVAL LAPINER, Individually and on Behalf
12  of All Others Similarly Situated,           **ORDER GRANTING DEFENDANTS'
                                                MOTION TO DISMISS SECOND
13              Plaintiff,                       AMENDED COMPLAINT**

14      v.

15  CAMTEK, LTD., RAFI AMIT, RONIT
    DULBERG, YOTAM STERN, and MOSCHE
16  AMIT,

17              Defendants
                                           /
18

19          Before the Court is defendant Camtek, Ltd.'s ("Camtek") and individual defendants

20  Rafi Amit, Ronit Dulberg, Yotam Stern, and Moshe Amit's (collectively, "defendants")

21  motion, filed August 17, 2009, to dismiss plaintiff Yuval Lapiner's ("plaintiff") Second

22  Consolidated Amended Class Action Complaint ("SAC"), pursuant to Rules 12(b)(1),

23  12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff has filed opposition,

24  to which defendants have replied.[1]  Having read and considered the papers filed in support

25

26  _____

27          [1]  On January 15, 2010, plaintiff filed a motion to submit a sur-reply. (See Admin.
    Mot. to File Pl.'s Sur-Reply.)  Plaintiff's motion is hereby denied, as plaintiff's proposed filing
28  is more properly characterized as a request to amend the complaint to add new factual
    allegations, and, as set forth below, plaintiff will be afforded the opportunity to file a third
    amended complaint.

1  of and in opposition to the motion, the Court rules as follows.[2]

2                                    **BACKGROUND**

3          In the SAC, plaintiff alleges Camtek is an Israeli corporation with its principal place of

4  business in Israel (see SAC ¶ 12) and that the four individual defendants are officers of

5  Camtek (see SAC ¶¶ 15-18).[3]  According to plaintiff, between November 22, 2005 and

6  March 20, 2007 ("class period"), defendants engaged in a "systematic scheme . . . to inflate

7  the price of Camtek common stock" by "publishing false and materially inflated reports of

8  Camtek's revenues, earnings, cash flow from operations ('CFFO') and days sales

9  outstanding ('DSO')."  (See SAC ¶¶ 1, 2.)  Specifically, plaintiff alleges that defendants (1)

10  cashed in letters of credit issued on orders of Camtek products before those orders were

11  accepted (SAC ¶¶ 39-40), (2) acted as a middleman in various transactions with Camtek's

12  affiliate companies (SAC ¶ 50), (3) engaged in "large-scaled factoring," whereby Camtek

13  would recognize immediate cash by selling its accounts receivable to financial institutions

14  (SAC ¶¶ 2, 41), (4) "improper[ly] . . . recogniz[ed] sales revenue from [products] still under

15  evaluation" (SAC ¶ 37), and (5) "mischaracterized or hid . . . growth in inventories" and

16  failed to timely disclose inventory write-offs (SAC  ¶ 36).  Plaintiff further alleges that, as a

17  result of defendants' alleged false and misleading statements and omissions, plaintiff

18  suffered "material losses when the truth about Camtek's business prospects and financial

19  status became known in the marketplace."  (See SAC ¶ 6.)

20          Based on said allegations, plaintiff asserts two causes of action:  (1) violation of

21  Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b),

22  and Rule 10b-5 promulgated thereunder; and (2) violation of § 20(a) of the Exchange Act,

23  15 U.S.C. § 78t(a).  Plaintiff brings such claims as a putative class action, alleging that he,

24  and others similarly situated, purchased Camtek stock on the NASDAQ stock exchange at

25

26          [2] On November 4, 2009, the Court took the matter under submission and vacated
     the hearing scheduled for November 13, 2009.
27

28          [3] Defendants Rafi Amit and Yotam Stern are also alleged to be directors of Camtek.
     (See SAC ¶¶ 15, 17.)

                                            2

1   artificially inflated prices during the class period.  (See SAC ¶¶ 1, 2, 11.)

2   **LEGAL STANDARD**

3   Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

4   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

5   cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

6   1990).  In analyzing a motion to dismiss, a district court must accept as true all material

7   allegations in the complaint, and construe them in the light most favorable to the

8   nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

9   "To survive a motion to dismiss, a complaint must contain sufficient factual material,

10  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

11  129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations

12  must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at

13  555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

14  allegation."  See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

15  **DISCUSSION**[4]

16  **I.    Subject Matter Jurisdiction**

17  By order filed June 2, 2009, the Court dismissed, with leave to amend, plaintiff's

18  Consolidated Amended Class Action Complaint for lack of subject matter jurisdiction.  In

19  particular, the Court found "plaintiff ha[d] failed to expressly allege or otherwise to show he

20  purchased his shares on a United States exchange."  (Order Granting Defs.' Mot. to

21  Dismiss Pl.'s Consolidated Am. Class Action Compl. 3:8-9, filed June 2, 2009.)  In the SAC,

22  plaintiff alleges he purchased his Camtek stock on the NASDAQ stock exchange.  (See

23  SAC ¶¶ 2, 11, 13, 14.)  Defendants argue the Court nonetheless lacks subject matter

24  jurisdiction over the instant action because, inter alia, "the conduct challenged under

25

26      [4] Defendants request this Court take judicial notice of certain documents attached to
    the Declaration of Richard H. Zelichov in Support of Motion to Dismiss Plaintiff's Second
27  Amended Class Action Complaint ("Zelichov Decl.").  Plaintiff opposes  the request to the
    extent it pertains to documents not "directly referred to or quoted from the Complaint."
28  (See Opp. 24:5-18.)  Where the Court has relied on any such evidence, the objection is
    overruled and otherwise is not addressed herein.

3

1   Section 10(b)–alleged misleading press releases and conference calls–emanated from

2   outside the U.S." and "most of Camtek's stock was held in Israel by Israelis."  (See Mot. at

3   24:1-25:3.)  Defendants' argument fails on two grounds.

4          First, in Morrison v. National Australia Bank, Ltd., 130 S. Ct. 2869 (2010), the

5   Supreme Court recently held that a district court's determination of the "extraterritorial

6   reach" of § 10(b) of the Exchange Act is a "merits question" and not a question of federal

7   subject matter jurisdiction.  See id. at 2877 ("[T]o ask what conduct § 10(b) reaches is to

8   ask what conduct § 10(b) prohibits, which is a merits question[;] [s]ubject-matter

9   jurisdiction, by contrast, refers to a tribunal's power to hear a case." (internal quotations

10  and citations omitted)).

11         Second, defendants' argument is based on the Second Circuit's "'conduct' or

12  'effects' test."  (See Mot. at 24:5-8.)  In Morrison, the Supreme Court expressly disapproved

13  the Second Circuit's test and announced a new "transactional test" for determining the

14  extraterritorial reach of § 10(b) and Rule 10b-5.  See Morrison, 130 S. Ct. at 2879-81

15  (Scalia, J.), 2888 (Stevens, J., concurring).  Under the "transactional test,"

16  § 10(b) applies to "transactions in securities listed on domestic exchanges, and domestic

17  transactions in other securities."  Id. at 2884.  "The focus of the Exchange Act is not upon

18  the place where the deception originated, but upon purchases and sales of securities in the

19  United States."  Id.

20         In light of the above, the Court will construe defendants' Rule 12(b)(1) jurisdictional

21  challenge as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief

22  can be granted.  See id. at 2877 (construing Rule 12(b)(1) challenge to subject matter

23  jurisdiction as Rule 12(b)(6) motion).

24         Turning to the application of § 10(b), the Court finds plaintiff's factual allegations that

25  Camtek stock was traded on the NASDAQ exchange and that he purchased his stock on

26  the NASDAQ exchange (see SAC ¶¶ 2, 11, 13, 14) are sufficient at the pleading stage to

27  establish the applicability of the Exchange Act.  See Morrison, 130 S. Ct. at 2884 (holding

28  securities laws apply to "transactions in securities listed on domestic exchanges").  In

4

1  particular, defendants' assertions that the conduct on which plaintiff's claims are based took

2  place outside of the United States, specifically in Israel, and that the majority of Camtek

3  stock is, purportedly, held in Israel, are unavailing after Morrison, see id., and to the extent

4  defendants challenge the truth of plaintiff's allegations regarding the history of his Camtek

5  stock purchases, such argument is unavailing at the pleading stage, as the Court is

6  required to accept as true all well-pleaded factual allegations, see Gompper v. VISX, Inc.,

7  298 F.3d 893, 895 (9th Cir. 2002).

8         Accordingly, the Court finds the Exchange Act applies to defendants' conduct as

9  alleged in the SAC, and to the extent defendants move to dismiss for lack of subject matter

10  jurisdiction, the motion will be denied.

11  **II.    Section 10(b)**

12         To allege a § 10(b) and Rule 10b-5 claim, a plaintiff must allege "(1) a material

13  misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or

14  sale of a security, (4) transaction and loss causation, and (5) economic loss." Dura

15  Pharm., Inc. v. Broudo, 544 U.S. 336, 341 (2005). Claims brought under § 10(b) and Rule

16  10b-5 must meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil

17  Procedure. See Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with

18  particularity the circumstances constituting the fraud . . . ."); Semegen v. Weidner, 780 F.2d

19  727, 731 (9th Cir. 1985). "In a securities fraud action, a pleading is sufficient under Rule

20  9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare

21  an adequate answer." Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995). To provide

22  sufficient notice, the plaintiff, in addition to alleging the "time, place, and nature of the

23  alleged fraudulent activities," must "plead evidentiary facts" to establish any allegedly false

24  "statement was untrue or misleading when made." See id.

25         Further, the plaintiff must meet the heightened pleading requirements of the Private

26  Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which requires the

27  plaintiff to "specify each statement alleged to have been misleading [and] the reason or

28  reasons why the statement is misleading." § 78u-4(b)(1). Additionally, the complaint must

5

1    "state with particularity facts giving rise to a strong inference that the defendant acted with

2    the required state of mind." § 78u-4(b)(2). To the extent an allegation is based on

3    information and belief, the plaintiff must allege "with particularity all facts on which that

4    belief is formed." Id. In so doing, the plaintiff must "reveal the sources of [his] information."

5    In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005) (internal quotation omitted).

6    Where a complaint alleges an omission, the "omission must be misleading" in order

7    to be actionable under the securities laws. Brody v. Transitional Hospitals Corp., 280 F.3d

8    997, 1006 (9th Cir. 2002). "[I]n other words it must affirmatively create an impression of a

9    state of affairs that differs in a material way from the one that actually exists." Id. "Silence,

10   absent a duty to disclose, is not misleading." Basic, Inc. v. Levinson, 485 U.S. 224, 239

11   n.17 (1988).

12       **A.    Group Pleading**

13   In the SAC, plaintiff "presume[s] that the false, misleading and incomplete

14   information conveyed in the Company's public filings, press releases and other publications

15   . . . are the collective actions" of all of the above-named defendants. (SAC

16   ¶ 21.) The "group pleading doctrine" allows plaintiffs to "rely on a presumption that

17   statements in 'prospectuses, registration statements, annual reports, press releases, or

18   other group-published information,' are the collective work of those individuals with direct

19   involvement in the everyday business of the company." In re Stratosphere Corp. Sec.

20   Litig., 1 F. Supp. 2d 1096, 1108 (D. Nev. 1998). Although, to date, the Ninth Circuit has not

21   addressed the issue, the "majority of district courts within the Ninth Circuit, have concluded

22   that group pleading is no longer viable under the PSLRA." See In re Impac Mortgage

23   Holdgins, Inc. Sec. Litig., 554 F. Supp. 2d 1083, 1092 (C.D. Cal. 2008); see also Glazer

24   Capital Mgmt., LP v. Magistri, 549 F.3d 736, 745 (9th Cir. 2008) (declining to address

25   "whether, in some circumstances, it might be possible to plead scienter under a collective

26   theory"). In any event, even if the group pleading doctrine remains viable, the SAC's

27   allegations "still have to satisfy the particularity requirements of the PSLRA." In re Tibco

28   Software Inc. Sec. Litig., No. 05-2146, 2006 WL 1469654, at *28 (N.D. Cal. May 25, 2006).

1   As discussed below, plaintiff has failed to satisfy the PSLRA's particularity requirements

2   with respect to its allegations against Camtek and the individual defendants

3   **B.     Material Misrepresentation or Omission**

4           Plaintiff alleges that defendants, at various times during the class period, made

5   material misstatements in various press releases, SEC filings, and earnings calls.  (See

6   SAC ¶¶ 34, 58-102.)  In support thereof, the SAC contains lengthy block quotes from

7   Camtek's press releases, including statements whose truthfulness plaintiff does not appear

8   to contest.  (See, e.g., SAC ¶ 58 (containing page-long block quote that includes statement

9   "Camtek  Ltd. . . . today announced results for the third quarter of 2005, which ended on

10  September 30"); id. ¶ 64 (containing page-long block quote that includes statement "[t]he

11  company is also announcing that as of March 19, 2006, Mrs. Ronit Dulberg will replace Mr.

12  Moshe Amit as Chief financial Officer of the Company"); see also SAC ¶¶ 61, 68, 73, 81,

13  87, 94.)  Following each block quote, plaintiff alleges that "such statements . . . were

14  materially false and misleading."  (See, e.g., SAC ¶¶ 59, 65.)

15          As the party bringing the instant action, plaintiff is responsible for identifying with

16  particularity the statements plaintiff claims are false and misleading, see 15 U.S.C. § 78u-

17  4(b)(1); the Court is not required "to search through" the 57-page SAC in an effort to link

18  the allegedly false statements to the reasons those statements purportedly are false.  See

19  In re Pixar Sec. Litig., 450 F. Supp. 2d 1096, 1100-01 (N.D. Cal. 2006) (dismissing

20  allegations contained in "extensive block quotes" that "contain[ed] true facts or statements

21  which [p]laintiff [did] not seem to contest"); see also Falkowski v. Imation Corp., 309 F.3d

22  1123, 1133 (9th Cir. 2002) (dismissing, as "vague," complaint that failed to identify which

23  statements were false and how they were false), amended by Falkowski v. Imation Corp.,

24  320 F.3d 905 (9th Cir. 2003).  Consequently, to the extent plaintiff relies on such

25  allegations as discussed above, plaintiff's claims are subject to dismissal.  Further, as

26  discussed below, to the extent plaintiff has sufficiently identified the statements on which he

27  relies, the pleadings remain insufficient.

28          Plaintiff identifies as misleading certain statements by defendants regarding

7

Camtek's operating cash flow and revenue (see SAC ¶¶ 59, 67, 75, 76, 83, 84, 89, 97, 99, 100) and the ratio between its receivables and revenues (also referred to as "DSO") (see SAC ¶¶ 38, 83, 89).[5]  In that regard, plaintiff does not allege the reported numbers themselves were false, but that the statements reporting them were misleading because defendants omitted to inform investors that the revenues, operating cash flow, and DSO were the result of "undisclosed and improper revenue recognition techniques."  (See SAC ¶ 59; see also SAC ¶¶ 62, 65, 67, 69, 74, 76, 82, 84, 88, 90, 98, 99.)  Specifically, plaintiff alleges that defendants (1) cashed in letters of credit issued on orders of Camtek products before those orders were accepted (SAC ¶¶ 39-40), (2) acted as a middleman in various transactions with Camtek's affiliate companies (SAC ¶ 50), (3) engaged in "large-scale factoring," whereby Camtek would recognize immediate cash by selling its accounts receivable to financial institutions (SAC ¶¶ 2, 41), (4) "improper[ly] . . . recogniz[ed] sales revenue from [products] still under evaluation" (SAC ¶ 37), and (5) "mischaracterized or hid . . . growth of inventories" and failed to timely disclose inventory write-offs (SAC ¶ 36).

Where, as here, the allegations are based on "information and belief" (see SAC at 2:3-10), the complaint must allege "with particularity all facts on which that belief is formed." See 15 U.S.C. § 78u-4(b)(1); In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 985 (9th Cir. 1999) (holding "plaintiff must provide, in great detail, all the relevant facts forming the basis of [plaintiff's] belief," including "the sources of [plaintiff's] information"), overruled on other grounds, South Ferry LP, No. 2 v. Killinger, 542 F.3d 776 (9th Cir. 2008)).

Here, the SAC alleges no facts to support plaintiff's allegations regarding letters of credit.  The SAC states only that defendants "never disclosed that [Camtek] had in fact used these letters of credit arrangements," (see SAC ¶ 40); nowhere in the SAC does plaintiff state the basis for his belief that the letters of credit were so used.  In support of his allegation that Camtek improperly acted as a middle-man, plaintiff alleges that Camtek

---

[5] With the exception of a single statement regarding on-site evaluation times, discussed below, no other sufficiently-identified statement is alleged to be false or misleading.

1   "belatedly disclosed in its 2008 Form 20-F that the actual amount of sales to parents and

2   affiliates in 2006 was $407,000," concluding therefrom that a previous disclosure in the

3   amount of $240,000 was false.  (See SAC ¶ 50.)  According to the SAC, however, the

4   $240,000 figure was with reference to the second quarter of 2006, whereas the $407,000

5   figure reflects such sales for the full year.  (See id.)  Further, while the complaint is replete

6   with assertions that defendants engaged in factoring, plaintiff's only factual allegation

7   pertaining to factoring is that, on June 29, 2007, Camtek disclosed that as of December 31,

8   2006, approximately $2.5 million in receivables were factored.  (See SAC ¶ 45.)  Plaintiff

9   only speculates that the "factoring balance might well have reached a level of $6 million

10  and possibly as high as $10 million to $15 million" during the class period.  (See SAC ¶ 46.)

11  Similarly, plaintiff's assertion as to premature recognition of revenue is based solely on

12  Camtek's 2006 Form 20-F, where Camtek revealed that its inventory levels included $11.53

13  million during 2005 and grew to $18.372 million during 2006 (see SAC ¶ 37); an increase in

14  inventory, however, does not necessarily imply revenue was prematurely recognized.

15  Although plaintiff does allege facts sufficient to support his allegation that defendants did

16  not disclose inventory growth and write-offs (see SAC ¶ 36), such omission, in the absence

17  of a duty to disclose, is, as discussed below, insufficient to support plaintiff's claims.

18          "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, 485

19  U.S. at 239 n. 17.  The complaint "must specify the reason or reasons why the statements

20  made by [defendants] were misleading or untrue, not simply why the statements were

21  incomplete."  Brody, 280 F.3d at 1006; see e.g., Heliotrope Gen., Inc. v. Ford Motor Co.,

22  189 F.3d 971, 980 (9th Cir. 1999) (finding no duty to provide detailed financials regarding

23  tax strategy absent statute requiring disclosure).  Here, plaintiff fails to allege any duty on

24  behalf of defendants to disclose any of the allegedly omitted information.  In particular,

25  plaintiff fails to show the statements made by Camtek were misleading in light of the

26  alleged omissions, and plaintiff alleges no other duty on behalf of defendants to specify the

27  sources of their revenues or cash flow, to characterize or classify inventory as "fixed

28  assets" versus "current assets," or to itemize inventory write-offs.  Indeed, plaintiff admits

1   the applicable accounting rules did not require Camtek to separately report each source of

2   its cash flow.  (See Opp. at 2:16-18.)  Indeed,

3       Lastly, as a separate matter and unrelated to the above-discussed "omissions," the

4   SAC identifies one statement as an affirmative false representation:  Camtek's estimation

5   that "on-site evaluations might take as little as up to four months for its own products."

6   (See SAC ¶ 34.)  As with the great majority of plaintiff's other allegations, however, the

7   SAC includes no facts showing such statement was false or misleading, and, consequently,

8   the allegation is insufficient to support plaintiff's claims.  (See id.); see also Silicon

9   Graphics, 193 F.3d at 985.

10       Accordingly, the SAC is subject to dismissal for failure to adequately identify a

11   material misstatement or omission by the defendants.

12       **C.    Scienter**

13       Plaintiff's allegations of scienter, which allegations are based on (1) stock sales and

14   (2) positions held in the company,[6] likewise are deficient, and thus constitute an additional

15   ground for dismissal.

16       Pursuant to the PSLRA, a plaintiff must "state with particularity facts giving rise to a

17   strong inference that the defendant acted with the required state of mind."  15 U.S.C.

18   § 78u-4(b)(2).  To create a "strong inference," the allegations must raise an inference that

19   is "more than merely plausible or reasonable–it must be cogent and at least as compelling

20   as any opposing inference of nonfradulent intent."  Tellabs, Inc. v. Makor Issues and

21   Rights, Ltd., 551 U.S. 308, 314 (2007).  The plaintiff need not allege facts giving rise to an

22

23       [6] Although not expressly alleged in the SAC as support for an inference of scienter,
24   plaintiff in his opposition argues such inference is supported by the SAC's Sarbanes-Oxley
     Act ("SOX") allegations, specifically, the allegation that defendants Dulberg and Amits's
     certifications in connection with Camtek's financial reports were made without any
25   reasonable or good faith basis.  (See Opp. at 17:4-14; see also Compl. ¶¶ 100-101.)
     While SOX certification "may provide additional evidence of scienter if the certifications
26   were false and misleading,"  see Stocke v. Shuffle Master, Inc., 615 F. Supp. 2d 1180,
     1190 (D. Nev. 2009), here, the SAC contains no allegation sufficient to plead such falsity,
27   and, in any event, "required certifications under Sarbanes-Oxley . . . add nothing
     substantial to the scienter calculus."  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981,
28   1004 (9th Cir. 2009).

10

1    "irrefutable" inference of scienter and the complaint must be "viewed in the required holistic

2    context," but the plaintiff "must plead facts rendering an inference of scienter <u>at least as</u>

3    <u>likely as</u> any plausible opposing inference." <u>Id.</u> at 324, 326, 328 (emphasis in original).  In

4    that regard, the complaint must state with particularity facts that "constitute strong

5    circumstantial evidence of deliberately reckless or conscious misconduct." <u>DSAM Global</u>

6    <u>Value Fund v. Altris Software, Inc.</u>, 288 F.3d 385, 388-89 (9th Cir. 2002) (citing <u>Silicon</u>

7    <u>Graphics</u>, 183 F.3d at 974.)  To raise a strong inference of deliberate recklessness, the

8    plaintiff "must state facts that come closer to demonstrating intent, as opposed to mere

9    motive and opportunity." <u>Silicon Graphics</u>, 183 F.3d at 974.

10                   **1.    Stock Sales**

11            Plaintiff first alleges that defendants profited from the alleged false statements by

12   sales of stock, at inflated prices, by Camtek and the individual defendants.  (<u>See</u> SAC

13   ¶¶ 51-52.)  "[S]uspicious stock sales by corporate insiders may constitute circumstantial

14   evidence of scienter." <u>Silicon Graphics</u>, 183 F.3d at 986 (citation omitted).  In evaluating

15   stock sales by corporate insiders, courts consider (1) the amount and percentage of shares

16   sold, (2) the timing of the sales, and (3) the consistency with prior trading history.  <u>See id</u>.

17   Here, plaintiff alleges that defendant Moshe Amit "sold the majority (if not all) of his Camtek

18   shares" on May 30, 2006 (<u>see</u> SAC ¶ 51), that defendant Camtek completed the private

19   placement of 2,525,252 shares on April 28, 2006 (<u>see</u> SAC ¶ 52), that Priortech, Camtek's

20   parent company (<u>see</u> SAC ¶ 5), sold $15 million of Camtek's stock on June 16, 2006 (<u>see</u>

21   SAC ¶¶ 5, 56, 129), and that, in September, October, and November of 2006, various other

22   defendants sold stock in Priortech, whose stock price plaintiff alleges was "closely linked" to

23   Camtek's (<u>see</u> SAC ¶¶ 53, 54, 55).  These allegations, however, fail to raise a strong

24   inference of scienter.

25            First, plaintiff's failure to allege facts showing the sales were inconsistent with any

26   defendant's prior trading history renders the allegations insufficient to raise a strong

27   inference of scienter.  <u>See</u> <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 1005 (9th

28   Cir. 2009) ("For individual defendants' stock sales to raise an inference of scienter, plaintiffs

                                                        11

must provide a meaningful trading history for the purposes of comparison to the stock sales within the class period.").

Second, other than the allegations concerning sales by Moshe Amit and Priortech, from which certain calculations can be made, the SAC contains no information as to the percentage of any defendant's holdings that is represented by the alleged sales. Moreover, as to Priortech's sales, the allegations show Priortech sold only 11.6% of its Camtek stock (see SAC ¶ 5, Zelichov Decl. Ex. 1 at 40, Ex. 8 at 3), a percentage too small to raise a suspicion of fraud. See, Ronconi v. Larkin, 253 F.3d 423, 435 (9th Cir. 2001) (holding sales of 10% and 17% of holdings not suspicious).[7]

Third, the timing of the sales does not raise a strong inference of scienter. Moshe Amit's alleged sales occurred shortly after he resigned from his position as CFO, and, consequently, in the absence of any allegations of inconsistent trading history, such sales are insufficient to raise an inference of scienter. See Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102, 1116 (N.D. Cal. 2003) (holding, where trading history not inconsistent, insider's "pending retirement" rendered sales "not sufficiently suspicious"). Indeed, all of the alleged sales occurred more than five months after the alleged misstatements began in November 2005 and well before plaintiff alleges the truth began to emerge on June 29, 2007 (see SAC ¶ 45; see also SAC ¶ 36 (alleging truth about

_____

[7] Although plaintiff cites to cases in which sales of a relatively small percentage of an insider's holdings raised an inference of scienter, those cases are distinguishable on their facts. See Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1232 (9th Cir. 2004) (finding sale of 2.1% of holdings sufficient to raise inference of scienter where sale resulted in "truly astronomical figure" of $900 million); Provenz v. Miller, 102 F.3d 1478, 1491 (9th Cir. 1996) (finding sale of 20% of holdings raised inference of scienter where sales occurred during two-month period between misleading statement and corrective disclosure); In re SeeBeyond Tech. Corp. Sec. Litig., 266 F. Supp. 2d 1150, 1169 (C.D. Cal. 2003) (finding sale of 7.6% of holdings sufficient to raise inference of scienter where defendants admitted lying to analysts and investors and sale was atypical given defendant's trading history); McCarthy v. C-COR Elec. Inc., 909 F. Supp. 970, 978-79 (E.D. Pa. 1995) (finding sales of between 15% and 20% of holdings raised inference of scienter where sale occurred roughly one month before corrective disclosure); In re SmartTalk Teleservices, Inc. Sec. Litig., 124 F. Supp. 2d 527, 542 (S.D. Ohio 2000) (finding sales of between 11% and 40% of holdings sufficient to raise inference of scienter where made at various peaks in stock price); Oxford Health., 187 F.R.D. at 140 (finding sales of between 17% and 67% of holdings raised inference of scienter where made shortly before negative press release and during state investigation).

1   defendants' inventories not disclosed prior to 2008 20-F filed April 8, 2009)),[8] nearly all of

2   the sales occurred several weeks or more after any allegedly misleading statement, and

3   none of the sales are alleged to have occurred at Camtek's peak price.  Consequently, the

4   allegations do not show the sales were "calculated to maximize personal benefit from inside

5   information," and, thus, are insufficient to support a strong inference of scienter.  See

6   Ressler v. Liz Claiborne, Inc., 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1998) (holding, where "most

7   of [defendants'] sales took place well over two weeks after [allegedly misleading] comments

8   were made" and "took place, for the most part, over six months prior to the release of the"

9   corrective disclosure, stock sales did not raise strong inference of scienter); see also In re

10  Copper Mountain Sec. Litig., 311 F. Supp. 2d 857, 875 (N.D. Cal. 2004) (noting that "[h]ad

11  [defendants] sales been calculated to reap the benefits of the undisclosed information, it is

12  likely that at least some of the stock sales would have been at a price closer to the stock's

13  maximum value").

14          **2.      Defendants' Corporate Positions/Core Operations**

15          Plaintiff alleges the individual defendants, "because of their positions with Camtek,

16  controlled the contents of the quarterly reports and press releases disseminated throughout

17  the Class Period" (see SAC ¶ 124), that such "defendants actively participated in the

18  preparation and authorized the release of public filings and press releases which materially

19  misstated and omitted facts related to the real condition of Camtek's ongoing business"

20  (see SAC ¶ 128), and that they "had access to the adverse non-public information . . . via

21  access to internal corporate documents, conversations, or connections . . . attendance at

22  management meetings and committees" (see SAC ¶ 122).

23          "Where a complaint relies on allegations that management had an important role in

24  the company but does not contain additional detailed allegations about the defendants'

25

26      [8] Although the SAC alleges that a sale by defendant Yotam Stern was made "just 18
    days before Camtek's disastrous fourth quarter preliminary earnings announcement" on
27  December 21, 2006 (see SAC ¶¶ 54, 94), the SAC does not allege such announcement
    revealed the alleged misrepresentations and omissions, and, indeed, plaintiff alleges
28  defendants continued making misleading statements and omitting to disclose the "improper
    revenue recognition techniques" (see SAC ¶ 98).

actual exposure to information, it will usually fall short of the PSLRA standard." South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008) (noting reliance on "core operations inference" unavailing absent "unusual circumstances"; citing as example of unusual circumstances case where defendant allegedly failed to disclose loss of two largest customers, comprising 80% of company's revenue). Here, plaintiff's conclusory allegation as to the individual defendants' "access" to "adverse non-public information" (see SAC ¶ 122) is insufficient, and plaintiff fails to allege any facts showing any of the individual defendant's had actual exposure to such information or that the information was of such "unusual" nature as to give rise to the core operations inference. "[C]orporate management's general awareness of the day-to-day workings of the company's business do not establish scienter absent some additional allegations of specific information." South Ferry, 542 F.3d at 784-85. Consequently, plaintiff fails to plead scienter on the basis of the position any individual defendant held in Camtek.

### 3. Plaintiff's Scienter Allegations as a Whole

Although none of the SAC's allegations of scienter is sufficient to raise a strong inference of scienter under the PSLRA, the Court must also "consider the complaint in its entirety," to determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter." Tellabs, 551 U.S. at 322-23. "Vague or ambiguous allegations are . . . properly considered as part of a holistic review when considering whether the complaint raises a strong inference of scienter." South Ferry, 542 F.3d at 784. "When conducting this holistic review, however, [courts] must also 'take into account plausible opposing inferences that could weigh against a finding of scienter.'" Zucco, 552 F.3d at 1006 (quoting Tellabs, 551 U.S. at 323).

In this instance, the allegations in the SAC, even when viewed as a whole, are not as "cogent and at least as compelling as any opposing inferences of nonfradulent intent." See Tellabs, 551 U.S. at 2505. Weighing against an inference of scienter, are (1) the SAC's allegations that defendants announced early their missed revenues for the fourth quarter of 2006 (see SAC ¶¶ 64, 94); see also Rombach v. Chang, 355 F.3d 164, 176-77

1  (2d Cir. 2004) (holding allegation of scienter "weakened by disclosure of certain financial

2  problems prior to the deadline to file [defendant's] financial statements"); (2) the absence

3  from the SAC of any allegation that defendants have restated their financials, see Zucco,

4  552 F.3d at 998 n.5 (finding no inference of scienter; noting, inter alia, defendant

5  corporation did not restate inventory reserves); and (3) the absence from the SAC of any

6  allegation that defendant Ronit Dulberg, Camtek's CFO during much of the relevant period,

7  sold any of her Camtek stock, see Roconi, 253 F.3d  at 436 (holding inference of scienter

8  weakened where "equally knowledgeable insiders act in a way inconsistent with the

9  inference that the favorable characterizations of the company's affairs were known to be

10  false when made").  Accordingly, even under a holistic Tellabs analysis, plaintiff fails to

11  raise the requisite "strong inference" of scienter.  See South Ferry, 542 F.3d at 784-85.

12      **D. Loss Causation**

13      To state a claim for securities fraud under the Exchange Act, a plaintiff must plead

14  "loss causation," the "causal connection between the [defendant's] material

15  misrepresentation and the [plaintiff's] loss."  Dura, 544 U.S. at 342.  To plead loss

16  causation, a plaintiff must allege (1) the fraudulent statement that caused the stock price to

17  increase, (2) the disclosure that revealed the statement was fraudulent, and (3) the decline

18  in stock price after the truth became known.  See id. at 346-47.  A plaintiff does not need to

19  show, however, that the misrepresentation was the only reason for the decline in value.

20  See In re Daou, 411 F.3d at 1025.

21      With respect to loss causation, the SAC alleges the following: (1) on December 21,

22  2006, Camtek preliminarily announced its financial results for the fourth quarter, reporting

23  lower than expected revenues, and leading to a 22% drop in Camtek's stock price from the

24  previous day's price (see SAC ¶¶ 94, 95); (2) on March 20, 2007, Camtek announced a net

25  loss of $2.2 million for the fourth quarter of 2006, causing a 10% drop in Camtek's stock

26  price from the previous day's price (see SAC ¶¶ 97-102); (3) on April 10, 2007, Camtek

27

28

15

revised downward its revenue guidance for the first quarter of 2007 (see SAC ¶¶ 103-104);[9] (4) on May 24, 2007, Camtek announced its first quarter 2007 financial results, disclosing a 41.8% revenue drop from the first quarter of 2006 (see SAC ¶¶ 105-106);[10] (5) on June 29, 2007, Camtek issued its Form 20-F for 2006, itemizing inventory located at customer locations and disclosing factoring agreements (see SAC ¶¶ 37, 45);[11] and (6) on April 7, 2009, Camtek issued its Form 20-F for 2008, disclosing write-offs taken in previous years and reclassifying inventory (see SAC ¶ 36).[12]  These allegations suffer from two deficiencies.

First, the disclosures plaintiff identifies as leading to the declines in Camtek's stock price have not been connected to the alleged misleading statements.  Although plaintiff alleges Camtek's disclosure that it would miss its projections caused the stock price to fall (see SAC ¶¶ 93, 95, 102), plaintiff does not allege how Camtek's disclosure that it would miss its projections amounts to a revelation of the alleged improper revenue recognition techniques.  Without factual allegations demonstrating how Camtek's negative financial results disclosed that Camtek, by reason of the alleged fraudulent financial activities, was incorrectly reporting cash flow, plaintiff cannot sufficiently plead loss causation.[13]  See

---

[9]  The April 10, 2007 disclosure resulted in no change in Camtek's stock price from the previous day; on April 11, 2007, however, Camtek closed 5.7% down.  (See Zelichov Decl. Ex. 25.)

[10]  Camtek closed 6.7% lower on May 24, 2007 than on the previous day. (See Zelichov Decl. Ex. 25.)

[11]  Camtek's June 29, 2007 stock price closed $.01 higher than its stock price for the previous day.  (See Zelichov Decl. Ex. 25.)

[12]  Camtek's stock price remained unchanged from April 6, 2009 to April 7, 2009, and fell by $.01 on April 8, 2009.  (See Zelichov Decl. Ex. 25.)

[13]  Plaintiff cites In re Daou, 411 F.3d 1006, to support his argument that a reported drop in revenue may establish loss causation where a plaintiff alleges a defendant inflated revenue.  (See Opp. at 21:7-10).  In Daou, however, investors were confronted not only with a reported drop in revenue, but also with a concurrent disclosure of an increase in "unbilled receivables," which the Daou plaintiff alleged was "the direct result of prematurely recognizing revenue."  411 F.3d at 1026.  Here, by contrast, the SAC alleges defendants disclosed information about the increased inventory and factoring at a time long after their announcement of the decrease in revenues, and, as noted below, those later disclosures were not followed by a decline in Camtek's stock price.

16

1   <u>Metzler Inv. GMBH v. Corinthian Colleges, Inc.</u>, 540 F.3d 1049, 1064 (9th Cir. 2008)

2   (finding drop in stock price insufficient to demonstrate market "understood a defendant's

3   statement precipitating a loss as a coded message revealing the fraud").

4          Second, the June 29, 2007 and April 7, 2009 Forms 20-F, which contained the

5   disclosures pertaining to defendants' use of factoring and inventory levels (<u>see</u> SAC ¶¶ 36,

6   37, 45), the information defendants are alleged to have fraudulently omitted from earlier

7   reports, were not followed by decreases in Camtek's stock price (<u>see</u> Zelichov Decl., Ex.

8   25); <u>see also</u> <u>Dura</u>, 544 U.S. at 347 (finding allegation of loss causation insufficient; noting

9   "complaint's failure to claim . . . share price fell significantly after the truth became known").

10  In sum, without facts supporting plaintiff's theory that the alleged omissions and

11  misrepresentations caused plaintiff's loss, plaintiff has not sufficiently alleged loss

12  causation.

13  **III.      Section 20(a)**

14          Under § 20(a) of the Exchange Act, any person who controls a person liable for

15  violating § 10(b) is jointly or severally liable for the violation.  <u>See</u> 15 U.S.C. § 78t(a)

16  (providing, to allege control person liability, plaintiff must allege (1) primary violation of

17  federal securities laws and (2) defendant exercised actual power or control over primary

18  violator).  As discussed above, plaintiff fails to state a primary violation of the securities

19  laws.  Consequently, plaintiff's allegations under Section 20(a) of the Exchange Act

20  likewise fail.[14]

21  **IV. Leave to Amend**

22          On June 2, 2009, the Court dismissed plaintiff's Consolidated Amended Class Action

23  Complaint ("CAC") for failure to allege plaintiff purchased Camtek shares on a United

24  States exchange.  In their motion to dismiss the CAC, however, defendants had identified a

25  number of pleading deficiencies.  (<u>See</u> Defs.' Mot. to Dismiss, filed Feb. 17, 2009).

26  Although plaintiff was on notice of such asserted deficiencies, plaintiff filed an amended

27  _____

28          [14]  In light of these findings, the Court does not address herein the individual
    defendants' arguments based on lack of personal jurisdiction.

complaint that was, essentially, a duplicate of the CAC, curing only that deficiency on which the Court based its order and failing to cure any other deficiencies on which defendants had based their motion.  Nevertheless, the Court will afford plaintiff leave to amend to cure the additional deficiencies discussed herein.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the SAC is hereby GRANTED, and the SAC is hereby DISMISSED with leave to amend.

Plaintiff's Third Amended Complaint, if any, shall be filed no later than March 16, 2011.

**IT IS SO ORDERED.**

Dated: February 2, 2011

MAXINE M. CHESNEY
United States District Judge

18