IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUVAL LAPINER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CAMTEK, LTD., RAFI AMIT, RONIT DULBERG, YOTAM STERN and MOSHE AMIT,<br><br>Defendants. | No. C 08-01327 MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

Before the Court is defendant Camtek, Ltd.'s ("Camtek") and individual defendants' Rafi Amit, Ronit Dulberg, Yotam Stern, and Moshe Amit's (collectively, "defendants") motion, filed May 16, 2011, to dismiss plaintiff Yuval Lapiner's ("plaintiff") Third Consolidated Amended Class Action Complaint ("TAC"). Plaintiff has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

On February 2, 2011, the Court dismissed plaintiff's second amended complaint ("SAC") with leave to amend. (See Order Granting Defs.' Mot. to Dismiss Second Am.

---

[1] On August 22, 2011, the Court took the matter under submission and vacated the hearing scheduled for August 26, 2011.

Compl. ("Order").) In particular, the Court found the SAC failed to plead sufficient facts to allege a material misstatement or omission by the defendants, failed to plead sufficient facts to support an inference of scienter on the part of any defendant, and failed to plead loss causation. (See id.)

On April 1, 2011, plaintiff filed the TAC, relying upon the same theory of securities fraud as that alleged in the SAC. Specifically, plaintiff alleges defendants, between November 22, 2005 and March 20, 2007 ("the class period"), engaged in a "systematic scheme . . . to inflate the price of Camtek common stock" by "publish[ing] false and materially inflated reports of Camtek's revenues, earnings, cash flow from operations ('CFFO') and days sales outstanding ('DSO')." (See SAC ¶¶ 1, 2; TAC ¶¶ 1, 2.) In particular, the TAC, as did the SAC, alleges Camtek's financial reporting was misleading because Camtek omitted from its reports that it: (1) cashed in letters of credit issued on orders of Camtek products before those orders were accepted (see SAC ¶¶ 39-40; TAC ¶ 50); (2) acted as a middleman in various transactions with Camtek's affiliate companies (see SAC ¶ 50; TAC ¶ 60); (3) engaged in "large-scale factoring," whereby Camtek would recognize immediate cash by selling its accounts receivable to financial institutions (see SAC ¶¶ 2, 41; TAC ¶¶ 2, 41, 54); (4) "improper[ly] . . . recogniz[ed] sales revenue from [products] still under evaluation" (see SAC ¶ 37; TAC ¶ 40); and (5) "mischaraterized or hid . . . growth of inventories" and failed to timely disclose inventory write-offs (see SAC ¶ 36; TAC ¶¶ 38, 39).[2] The TAC includes few additional factual allegations aimed at remedying the deficiencies found in the SAC.

As with the SAC, the TAC asserts two causes of action: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder; and (2) violation of § 20(a) of the Exchange Act, 15 U.S.C.

---

[2] In addition to these alleged omissions, the TAC, like the SAC, appears to allege that Camtek affirmatively misrepresented its "on-site evaluation times" when it estimated that such evaluations "might take as little as up to four months." (See TAC ¶ 36.) Nonetheless, the TAC, like the SAC, includes no foundation for plaintiff's allegation that such statement was false.

§ 78t(a).

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

In addition, to allege a § 10(b) and Rule 10b-5 claim, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." Dura Pharm., Inc. V. Broudo, 544 U.S. 336, 341 (2005). Claims brought under § 10(b) and Rule 10b-5 must meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting the fraud . . . ."); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (applying Rule 9(b) standards to § 10(b) claim). Particularity requires the plaintiff not only to allege the "time, place, and nature of the alleged fraudulent activities," but also to "plead evidentiary facts" to establish any allegedly false "statement was untrue or misleading when made." See Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995).

Further, the plaintiff must meet the heightened pleading requirements of the Private

1  Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which requires the
2  plaintiff to "specify each statement alleged to have been misleading [and] the reason or
3  reasons why the statement is misleading." § 78u-4(b)(1). Additionally, the complaint must
4  "state with particularity facts giving rise to a strong inference that the defendant acted with
5  the required state of mind." § 78u-4(b)(2). To the extent an allegation is based on
6  information and belief, the plaintiff must allege "with particularity all facts on which that
7  belief is formed." Id. In so doing, the plaintiff must "reveal 'the sources of [his]
8  information.'" In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005) (quoting In re
9  Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 985 (9th Cir. 1999) (holding "plaintiff must
10 provide, in great detail, all the relevant facts forming the basis of [plaintiff's] belief")).

11      Where a complaint alleges an omission, the omission "must be misleading" in order
12 to be actionable under the securities laws. Brody v. Transitional Hospitals Corp., 280 F.3d
13 997, 1006 (9th Cir. 2002). "[I]n other words it must affirmatively create an impression of a
14 state of affairs that differs in a material way from the one that actually exists." Id. "Silence,
15 absent a duty to disclose, is not misleading." Basic, Inc. v. Levinson, 485 U.S. 224, 239
16 n.17 (1988).

**DISCUSSION**

18      As noted, the Court dismissed plaintiff's SAC on three grounds: (1) failure to identify
19 a material misstatement or omission by the defendant, (2) failure to adequately plead
20 scienter, and (3) failure to sufficiently allege loss causation. As discussed below, the TAC
21 fails to remedy the SAC's deficiencies with respect to the pleading of a material
22 misstatement or omission,[3] and, consequently, fails to state a claim for violation of § 10(b)
23 or § 20(a) of the Exchange Act.[4]

---

[3] Given this finding, the Court does not address the sufficiency of the TAC's allegations with respect to scienter.

[4] Moreover, the TAC includes no additional allegations with respect to loss causation. Instead, plaintiff argues the Court failed to "consider the effect of [d]efendants' materially misleading statements and omissions that led to artificial inflation of [d]efendant Camtek's stock price in the earlier part of the [c]lass [p]eriod, which lead to [p]laintiff and the [c]lass purchasing Camtek shares at artificially high prices." (See Opp. at 20:22-23:19.)

4

In particular, the amended pleadings add nothing to plaintiff's allegations, previously dismissed for lack of foundation, pertaining to Camtek's alleged undisclosed use of letters of credit (see TAC ¶ 50) and Camtek's alleged undisclosed transactions with affiliate companies (see TAC ¶ 60).[5]  With regard to plaintiff's remaining three categories of alleged omissions, the TAC's additional allegations are unavailing.  Specifically, neither the TAC's new factual allegations with respect to letters sent to Camtek from the Securities and Exchange Commission ("SEC") and/or Camtek's responses thereto (see TAC ¶¶ 42-48, Exs. H, I, K), nor an October 8, 2008 order issued by the Eastern District of Michigan suffice to remedy the deficiencies previously noted.  Although purporting to address the alleged "defective nature of [defendants'] inventory and factoring disclosures" (see TAC ¶ 48), those additional allegations do not support the TAC's allegations that Camtek engaged in "large-scale factoring," (see SAC ¶¶ 2, 41; TAC ¶¶ 2, 41, 54);[6] "improper[ly] . . . recogniz[ed] sales revenue from [products] still under evaluation" (see SAC ¶ 37; TAC ¶ 40);or "mischaracterized or hid . . . growth of inventories" and failed to timely disclose inventory write-offs (see SAC ¶ 36; TAC ¶¶ 38, 39).

## I. SEC Letters

Relying on allegations concerning an August 13, 2009 letter and a September 17, 2009 letter sent to Camtek by the SEC, and Camtek's responses thereto (see Opp. at 11:1-11:4; see also TAC ¶¶ 42-47, Exs. H, I, K), plaintiff, in his opposition, argues the TAC "now allege[s] with great particularity the SEC investigation into the improper accounting and

---

The Supreme Court, however, has squarely rejected the argument that such allegations are sufficient to plead loss causation.  See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005) (holding "artificially inflated purchase price is not itself a relevant economic loss").  Consequently, even apart from the TAC's other deficiencies discussed herein, the TAC is subject to dismissal for failure to plead loss causation.

[5] Further, the allegations concerning affiliate transactions appear to be based on the same error in plaintiff's reading of Camtek's disclosures, previously identified by the Court. (See TAC ¶ 61; Order at 8:24-9:5 (noting disclosure of $407,000 in sales for full year 2006 does not contradict previous disclosure of $240,000 in sales for second quarter 2006).)

[6] The SAC and TAC allege Camtek recognized immediate cash by selling its accounts receivable to financial institutions.  (See id.)

5

reporting activities in which [ ] Camtek had been engaged through the class period and which specifically involved the inadequacy of [d]efendants' factoring and inventory classification disclosures in their public filings." Similarly, in the TAC, plaintiff alleges the "SEC correspondence . . . is strongly probative of the materially defective nature of the inventory and factoring disclosures made be [d]efendants during the [c]lass [p]eriod." (See TAC ¶ 48.)  Whether couched in terms of an argument or an allegation, however, such contention remains without factual support.

First, contrary to plaintiff's assertion, the SEC letters do not represent an "investigation" into Camtek (see Opp. at 11:1), but instead a "review" by the SEC's Division of Corporate Finance, as opposed to the SEC's Division of Enforcement, and which review's purpose was "to assist [Camtek] in [Camtek's] compliance with the applicable disclosure requirements and to enhance the overall disclosure in [Camtek's] filing" (see TAC Ex. H at 1).  The correspondence includes no accusation of wrongdoing on the part of Camtek, or any assertion that Camtek's class-period statements were misleading.

Second, and contrary to the TAC, the SEC correspondence is not "strongly probative of" (see TAC ¶ 48), but, rather, entirely unrelated to, the misstatements alleged.  The only request in the correspondence pertaining to class-period statements concerns missing "audit reports" for the class-period Forms 20-F.  (See TAC Ex. H at 2.)  Plaintiff does not contend the audit reports were in any manner related to the alleged scheme.  To the extent the correspondence includes questions regarding characterization of inventory or factoring, such inquiry pertains solely to Camtek's Form 20-F for 2008, covering a period well after the end of the class period (see id. at 2-3).

Nor do Camtek's responses to the SEC provide the needed support for plaintiff's allegation that Camtek improperly recognized revenue from any inventoried assets during the class period.  At the outset, as defendants point out, plaintiff conflates two of Camtek's responses, which, contrary to plaintiff's argument, do not refer to the same assets (see Mot. at 14 n.9); specifically, plaintiff erroneously combines Camtek's statement that, in 2008, it transferred "from inventory to fixed assets" certain assets used "as demonstration

6

systems, training systems, and for product development," which systems it "does not have the intention to sell" (see TAC Ex. I at 1-2), with Camtek's statement that, in 2008, it transferred to "long term inventory" $22 million in assets that were "not expected to be converted or consumed within the next twelve month period" due to "the global economic recession and the decrease in demand for capital equipment" (see id. at 2-4). Equally, if not more, importantly, plaintiff does no more than speculate that the $22 million in inventory transferred to long-term inventory was inventory Camtek "improperly recognized as revenues" during the class period, after which plaintiff arrives at a hypothetical calculation based thereon. (See TAC ¶ 43 (alleging failure to sell such amount of inventory in 2006 "would have represented a material shortfall of almost 22%").) Neither the SEC correspondence nor the allegations in the TAC include any facts to support such an inference.

Likewise, the SEC's requests and Camtek's responses thereto provide no support for plaintiff's speculation that Camtek engaged in undisclosed class-period factoring, let alone that such alleged factoring "might well have reached $6 million and possibly as high as $10 million to $15 million" (see TAC ¶ 57). In particular, neither the SEC's request that Camtek explain how it accounts for factored receivables, nor Camtek's offer to "expand the description of how the Company accounts for factored receivables" in future filings (see TAC Ex. I at 4), suggests Camtek engaged in undisclosed class-period factoring in any amount.

Nor does the SEC correspondence address any duty on the part of Camtek to break out from its disclosures various details regarding its inventory or write-offs of certain inventory, and plaintiff identifies no authority to support plaintiff's contention that a request by the SEC for additional information gives rise to an inference that any previous report that did not include such information was, as a matter of either law or fact, misleading.

In short, the new allegations regarding the SEC correspondence add nothing to plaintiff's unsupported speculation that because Camtek reported losses and increases in inventory and write-offs, Camtek's class-period reports of increased revenue must have

7

been false.  Such speculation was insufficient when it was alleged in the SAC, and fares no better in the TAC.

## II.     SEC v. Delphi Corp.

The TAC's only other substantive amendment, which is best characterized as a legal argument in opposition to dismissal, relies on a decision issued by the Eastern District of Michigan on a motion to dismiss.  (See TAC ¶ 41 (citing SEC v. Delphi Corp., No. 06-14891, 2008 WL 4539519 (E.D. Mich. Oct. 8, 2008).)   The TAC alleges said decision shows "inventory reporting abuses and undisclosed factoring arrangements," of a type plaintiff asserts are similar to those in which the TAC alleges Camtek engaged, "have been found to be violative of the federal securities laws."  (See id.)  Such allegations likewise are unavailing.

First, assuming the allegations at issue in Delphi constitute sufficiently pleaded violations of the securities laws, such circumstance has no bearing on the TAC's allegation that any defendant here engaged in any such "inventory reporting abuses" or "undisclosed factoring arrangements."  (See id.); Delphi Corp., 2008 WL 4539519.  The SAC was dismissed for the reason that plaintiff failed to plead sufficient factual support for, inter alia, his allegation that Camtek improperly recognized revenues from inventoried assets and engaged in undisclosed factoring, not for the reason that such conduct, if properly alleged, is not actionable.

Second, the allegations found sufficient to state a claim of securities fraud in Delphi were markedly different than those at issue here.  In Delphi, with regard to inventory, the SEC alleged the defendant named therein had "entered into two transactions through which it (1) purported to sell approximately $200 million of precious metal inventory to a bank . . . (2) and approximately $70 million of automotive generator cores and batteries to a company called BBK, Ltd. . . . [while] simultaneously agree[ing] that it would repurchase the same inventory from the same parties" during the next reporting period.  See Delphi, 2008 WL 4539519, at *12.  In contrast to the SEC's specific factual allegations of improper sales, the TAC, like the SAC, does no more than speculate that, because Camtek's inventory

8

increased, Camtek must have improperly recognized sales on inventory. (See, e.g. TAC ¶ 40 (alleging Camtek "recogniz[ed] sales revenues from [products] still under evaluation" that were "eventually not accepted by the customer" and "returned to inventory"; providing as basis for such allegation Camtek's reported increase in inventory between 2005 and 2006)). Similarly distinguishable are the SEC's detailed allegations in Delphi, based on the defendant's admission in a Form 8-K that such defendant had only partially disclosed its factoring, as well as on information from such defendant's employees that it had kept hidden other, "'secret' factoring," which amounts subsequently were disclosed in small increments that "[went] unnoticed." See Delphi, 2008 WL 4539519, at *13-14 (alleging details of scheme resulting in material overstatement of operating cash flow in specific amounts for specific quarters).[7] Here, as noted, plaintiff does no more than speculate that undisclosed class-period factoring "might well have reached $6 million and possibly as high as $10 million to $15 million." (See TAC ¶ 57.) The TAC includes no factual allegation, nor even conclusory assertion, that such factoring did in fact exceed the amounts reported.

In short, Delphi fails to provide any support, either factually or legally, for the TAC's allegations.

**III.    Leave to Amend**

Plaintiff requests leave to amend in the event the TAC is found deficient. Plaintiff asserts that he "has not had the opportunity to have the Complaint assessed by the Court under the . . . pleading requirements under Rule 9(b) and the PSLRA and to cure any deficiencies in the pleadings that the Court may identify." (See Opp. at 25 n.22.) Contrary to plaintiff's assertion, the Court assessed the SAC, set forth in detail the deficiencies the Court noted therein, both under Rule 9(b) and the PSLRA, and afforded plaintiff a full opportunity to cure those deficiencies, despite plaintiff's having been put on notice of such deficiencies as early as February 17, 2009. (See Order at 17:22-18:4.) Nor does plaintiff

---

[7] Moreover, because Delphi concerned a case brought by the SEC, the heightened pleading requirements of the PSLRA did not apply. See 15 U.S.C. § 78u-4(a) (providing "[t]he provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action").

9

suggest any new facts he could plead in support of his conclusory allegations.

Accordingly, leave to amend to file a Fourth Amended Complaint will be denied. See Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980) (noting "a district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint").

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is hereby GRANTED, and the above-titled action is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: August 31, 2011

_____
MAXINE M. CHESNEY
United States District Judge